IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DAVID A. SPRINGER, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:12-CV-0793-KOB |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Claimant, David A. Springer, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits and Supplemental Security Income. Springer timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end, this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id*. Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, "no similar presumption of validity attaches to the [Commissioner's] conclusions of law, including determination of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) (quoting *Smith v. Schweiker*, 646 F.2d , 1075, 1076 (5th Cir. Unit A Jun.1981)). Therefore, this court reviews de novo the Commissioner's conclusions of law. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations outline a five-step process that the Commissioner uses to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The Commissioner must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment or combination of impairments;

(3) whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]

(4) whether the claimant can perform any of his or her past work; and

(5) whether there are significant numbers of jobs in the national economy that the claimant can perform.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011). The evaluation process continues until the Commissioner can determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who is doing substantial gainful activity will be found not disabled at step one. 20 C.F.R.

---

[1] The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525.

§§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which she will use to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five the burden shifts to the Commissioner to show other work the claimant can do. *Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). To satisfy this burden, the Commissioner must produce evidence of work in the national economy that the claimant can do based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f). A claimant who can do other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v). A claimant who cannot do other work will be found disabled. *Id.*

In the present case, the Administrative Law Judge (ALJ) determined Springer was not engaged in substantial gainful activity, and found he had the severe impairments of "lumbar degenerative disc disease, status post lumbar surgery x 2 with lumbar fusion at L5-S1, and obesity." R. 27. The ALJ concluded Springer did not suffer

from a listed impairment. R. 29. The ALJ found Springer had the residual functional capacity (RFC) to perform light work with additional restrictions. R. 29-30. The ALJ restricted Springer to occasionally lifting 15-20 pounds with his right hand, and 10-15 pounds with his left hand. R. 29. He could lift 20-25 pounds with both hands, sit for 30 minutes at a time, stand for 15-20 minutes at a time, and walk one-half mile at a time. R. 29-30. Springer required a sit/stand option throughout the 8-hour workday, and was to avoid bending, stooping, and twisting. R. 30. With this RFC, the ALJ found Springer unable to perform his past relevant work. R. 31.

When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines ("the grids") to establish the presence of other jobs at step five.[2] *Foote*, 67 F.3d at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue, or mental illness) also prevents exclusive reliance on the grids. *Id.* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Id*. Based on Springer's RFC and the testimony of a vocational expert (VE), the ALJ found Springer could perform other work in the national economy. R. 32-33, 68-70. Therefore, the ALJ found he was not disabled at step five of the sequential evaluation framework. R. 33.

### III. FACTUAL BACKGROUND

---

[2] The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).  Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

Springer filed a previous disability claim, and on July 10, 2007, an ALJ found Springer was disabled from May 7, 2004, through October 25, 2005. R. 104. That decision was not appealed. R. 170. Springer filed his current applications for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) on April 7, 2008. R. 25. The alleged onset date of disability, as amended, is April 7, 2008. R. 25. Springer was 40 years old at the time of the ALJ's decision. R. 32. He has a high school education, and past relevant work as a foreman at a tree cutting service and in shipping at a poultry processing plant. R. 31-32.

Springer alleges he is disabled due to degenerative disc disease, nerve damage, chronic pain and depression. Pl.'s Br. 2. He testified at his ALJ hearing that he could lift 10-15 pounds with his left hand, and 15-20 pounds with his right. R. 53. He testified that he could stand for 15-20 minutes before he needed to sit down, and that he could sit for 15- 20 minutes before he needed to stand. R. 53. Springer testified he could probably walk for one-half mile before he had to sit down and rest. R. 54. He testified that he required naps lasting 45 minutes to one hour during the day. R. 54. He testified that his pain was "at least a 9 all the time," and that his pain medications affected his ability to focus. R. 58, 60.

Most of the medical records are from prior to Springer's alleged onset date of April 7, 2008. Those records show Springer had two back surgeries in 2004. R. 321. More recent treatment records show Springer has received treatment from Dr. John Roberts at Tennessee Valley Pain Consultants. R. 378-90, 438-48. From April 9, 2007,

to January 13, 2010, Springer received epidural injections, facet injections, and nerve root blocks on numerous occasions. During this entire time he reported pain at an 8/10 level and was prescribed narcotic pain medications.

On July 7, 2008, Springer underwent a consultative physical examination by Dr. Marlin Gill. R. 405-06. Dr. Gill found Springer's gait was normal and found no tenderness, but Springer complained of pain with lumbar movement. Springer was able to squat all the way down and come back up again holding onto the table for balance, and was able to walk across the room on his tiptoes and heels. Dr. Gill diagnosed Springer as having low back pain and a history of lumbar disc herniation, with previous surgery. R. 406.

An MRI scan from October 26, 2009, showed a satisfactory appearance of the L5-S1 fusion, and no impressive abnormality to suggest an etiology of Springer's right-sided radicular symptoms. The MRI also showed previous laminectomy changes at L5-S1 with "perhaps a slight thin laminectomy effect on the right at L4-5." R. 462.

Springer underwent a psychological evaluation by Dr. Jon Rogers on June 24, 2008. R. 398-403. Dr. Rogers noted Springer "seemed quite sad" and his "mood appeared depressed." Springer was able to perform serial seven subtractions; could correctly repeat 5 digits forward and three digits backward; and was able to recall three objects after five minutes. R. 400. Dr. Rogers found Springer's judgment was unimpaired, and his insight was good. He diagnosed Springer with Pain Disorder Associated with Psychological Factors and His General Medical Condition; Depressive

Disorder; and Anxiety Disorder. R. 401. He assessed Springer as having a GAF of 50.[3] R. 402. Dr. Rogers also found the extent of Springer's mental impairment was severe and he opined Springer "should be able to perform most activities of daily living." R. 403.

## IV. ISSUES PRESENTED

Springer raises the following issues on appeal: 1) whether the ALJ erred because his RFC finding was not based on a medical opinion; 2) whether the ALJ failed to properly consider Springer's obesity; 3) whether the ALJ's finding concerning the impact of his mental impairments is based on substantial evidence; and 4) whether the evidence submitted to the Appeals Council renders the denial of benefits erroneous.

## V. DISCUSSION

### A.

Although Springer acknowledges nothing expressly requires an RFC assessment from a medical source, he argues that one is required as a practical matter to avoid an ALJ substituting his judgment for that of a physician. Pl.'s Br. 6. Neither the Commissioner's regulations nor the law of this circuit require that an RFC be based upon a medical source statement from a doctor.

---

[3] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th Edition) ("DSM-IV"). A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV at 32 (emphasis in original).

The regulations provide that opinions on issues reserved to the Commissioner, such as a claimant's RFC, are not medical opinions.

> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

§ 404.1527(d). One of the specifically reserved examples is a claimant's RFC:

> Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.

§ 404.1527(d)(2). Therefore, under the regulations, a claimant's RFC is not a medical opinion, and a doctor's opinion was not required for the ALJ to assessing Springer's RFC.

The Eleventh Circuit has also recognized that determining a claimant's residual functional capacity and ability to work is a task for the ALJ, and not doctors. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (unpublished) ("[T]he task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."). It has also found an ALJ's RFC finding can be supported by substantial evidence even if no medical source statement is in the record. In *Green v. Social Security Administration*, the Court found the ALJ had properly refused to credit a Physical Capacities Evaluation ("PCE") from the claimant's treating physician. 223 F. App'x 915, 922-23 (11th Cir. 2007) (unpublished). The Court in *Green* rejected the claimant's argument that without that PCE nothing in the record supported

the ALJ's RFC finding. *Id.* at 923. The Court held that other evidence from the claimant's doctors (which did not contain a PCE or RFC assessment) was sufficient to support the ALJ's finding that the claimant could perform light work. *Id.* at 923-24; *see also Langley v. Astrue*, 777 F Supp. 2d. 1250, 1258 (N.D. Ala. 2011) (holding RFC is not a medical opinion and need not be based upon a doctor's RFC opinion).

In the present case, sufficient medical and other evidence in the record allowed the ALJ to assess Springer's RFC. The ALJ relied on the consultative examination by Dr. Gill, which he noted showed Springer "had a normal gait;" "was able to squat all the way down and arise while holding the table for balance;" and "was able to walk on his tiptoes and heels." R. 30. The ALJ also relied on the findings of an MRI, which the ALJ described as follows:

> An MRI of October 26, 2009, showed a satisfactory appearance of the L5-S1 fusion. No impressive abnormality was seen to suggest an etiology of the right-sided radicular symptoms. There were previous laminectomy changes at L5-S1 with perhaps a slight thin laminectomy defect on the right at L4-5.

R. 30. The ALJ found the MRI was "not consistent with the limitations and the pain that the claimant alleges." R. 30.

The ALJ also relied on Springer's testimony in assessing his RFC. R. 31. The ALJ noted Springer testified he is able to lift 10-15 pounds with his left hand, and 15-20 pounds with his right. R. 31, 53. The ALJ based his finding that Springer could stand for 15-20 minutes, and walk for one-half mile at a time on his testimony at the hearing. R.31, 53-54. The ALJ also restricted him from bending, stooping, and twisting, which

was consistent with Springer's testimony at his hearing. R. 31, 58.

Springer has not shown insufficient medical and other evidence in the record to allow the ALJ to assess his RFC. The ALJ relied on Dr. Gill's consultative physical examination, the 2009 MRI, and Springer's own testimony in assessing his RFC. Substantial evidence supports the ALJ's RFC finding, and he did not err in failing to obtain an RFC from a medical source.

Springer also appears to argue the ALJ improperly relied upon the RFC finding of the State agency single decision maker (SDM), who was not a doctor. Pl.'s Br. 7. Although Springer argues the SDM's opinion was rendered without the involvement of a medical consultant, the record contains a physical summary completed by Dr. Keith H. Langford. R. 428. That summary states that the objective evidence did not reveal Springer's pain to be totally incapacitating, and that his activities of daily living confirm he is able to do light work. R. 428. Springer also argues the SDM's decision was not based on the record as a whole. Pl.'s Br. 7. While true, the ALJ specifically noted the opinion was "from a non-medical professional and additional evidence has been received since that time." R. 31. Therefore, he gave the opinion "some, but not great weight." R. 31.

Because the SDM was not a physician, his RFC assessment was not opinion evidence at the ALJ hearing level. *See Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871-72 (11th Cir. 2012) (unpublished decision) (finding an RFC form completed by a single decision maker is not evidence at the ALJ level under POMS § DI

24510.050)[4]. In *Siverio*, the ALJ erroneously believed the RFC of the SDM was a medical opinion from a State Agency physician, and gave it significant weight. *Id*. at 872. The Court in *Siverio* found the ALJ's improper reliance on the SDM's opinion was not harmless error. *Id.* at 872. However, *Siverio* is distinguishable from the present case.

In the present case, the ALJ was aware the SDM was not a physician, and was not relying on his RFC assessment as a medical opinion. R. 31. The ALJ did not refer to the details of the SDM's RFC assessment, and independently discussed the medical records and Springer's testimony in assessing his RFC. Therefore, substantial evidence independent of the SDM's RFC assessment supports the ALJ's decision. This factor distinguishes the present case from *Siverio*, in which the Court found there was no substantial evidence in the record to support the ALJ's RFC assessment except for the SDM's opinion. 461 F. App'x. at 872. Because the ALJ did not rely on the SDM's physical summary as a medical opinion, and because substantial evidence supports his decision even without consideration of the SDM's RFC assessment, if there was an error, it was harmless and does not require a remand. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (unpublished decision) (holding an incorrect application of the regulations is harmless error when the correct application would not contradict the ALJ's ultimate findings).

Springer also argues the ALJ failed to explain how a person limited to light work could perform jobs with no stooping or bending. Pl.'s Br. 8. In assessing Springer's

---

[4] The POMS is a policy and procedural manual issued to help clarify the regulations for the Social Security Administration field offices.

RFC, the ALJ found he could perform light work with certain exceptions. R. 29-30. Among those exceptions was a need to avoid bending, stooping, and twisting. R. 30. The ALJ relied upon the testimony of a vocational expert to find Springer was able to perform the unskilled, light level jobs of food sales clerk, garment bagger, and solderer. R.69. The VE testified that a need to avoid bending, twisting, and stooping would not preclude those jobs. R. 70. Therefore, Springer's argument about the impact such restrictions would have on light work in general is irrelevant. The ALJ properly relied upon expert vocational testimony to find Springer could perform specific jobs in spite of the restriction on bending, stooping and twisting.

**B.**

Springer argues the ALJ did not consider his obesity, but "merely dismissed this condition from consideration as not alleged." Pl.'s Br. 9. A review of the ALJ's decision shows he did consider Springer's obesity. Although the ALJ found Springer's obesity was a severe impairment, he observed that no physician had stated Springer's weight limited or impaired his functioning. R. 31. He further found that "the record does not show that this impairment has impacted on his musculoskeletal system or general health as to cause his treating physician to diagnose him with impairments secondary to or in combination with obesity." R. 31. Therefore, the ALJ considered Springer's obesity, but found it did not cause any limitation in his ability to perform work related activities.

After discussing the plaintiff's obesity, and concluding it did not impair his functioning, the ALJ stated: "Moreover, at the hearing, the claimant did not allege

functional limitations due to his weight (SSR 02-01p)." R. 31. His reference to Springer's failure to allege functional limitations was made to support his findings. He did not use that failure to dismiss or fail to consider Springer's obesity.

Further, the ALJ properly considered Springer's obesity in accordance with Social Security Ruling 02-01p, which requires the ALJ to consider "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment" when assessing his RFC. SSR 02-01p, 2000 WL 628049 (S.S.A.). He gave reasons supported by substantial evidence for finding Springer's obesity did not impose significant limitations on his ability to work. Therefore, the ALJ did not err in his consideration of Springer's obesity.

## C.

Springer argues the ALJ's finding concerning the impact of his mental impairments is not based on substantial evidence. Pl.'s Br. 11-14. In finding Springer's mental impairments were not severe, the ALJ noted Springer had been evaluated by Dr. Carol Walker, a neuropsychologist, on September 30, 2005, and received some treatment for depression in October and November 2005. R. 28. However, he observed the medical records showed no other visits to Dr. Walker until June 2007, when Springer "was evaluated in order to assess the appropriateness of implantation of a dorsal column simulator from a psychological perspective." R. 28.

The ALJ noted Springer reported to Dr. Jon Rogers, the consultative psychological examiner, that he had difficulty concentrating, and that depression and

anxiety are a factor in his employability. R. 28. But the ALJ observed Springer "was able to perform serial sevens and repeat a string of digits forwards and backwards" during the examination. R. 28-29.

The ALJ also noted Springer reported to Dr. Martin Gill, the consultative physical examiner, that he was able to go to the grocery store to shop, and he reported on his disibility forms he was able to go to stores alone. R. 29. He noted Springer goes to the fitness center for pool therapy and exercise several times per week. R. 29. The ALJ concluded these reported activities required Springer to interact with others to some degree. R. 29. The ALJ also noted Springer reported he was able to take care of his own personal needs, and was not receiving any treatment from a mental health professional. R. 29.

Based on this evidence, the ALJ found Springer's mental impairments resulted in "mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and mild deficiencies in concentration, persistence or pace." R. 29. The ALJ also found no evidence Springer had ever had any extended episodes of deterioration or decompensation. R. 29. Therefore, the ALJ found Springer's mental impairments were not severe, citing 20 C.F.R. §§ 404. 1520a(d)(1) and 416.920a(d)1(1). R. 29. The cited regulations provide that the Commissioner will generally conclude a claimant's impairments are not severe if mild limitations are found in the three areas addressed by the ALJ, and the claimant has had no extended episodes of deterioration or decompensation. 20 C.F.R. §§ 404. 1520a(d)(1), 416.920a(d)1(1).

In finding Springer's mental impairments were not severe, the ALJ gave some, but not great weight to the of opinions of Dr. Rogers. R. 31. In determining how much weight to give to each medical opinion, the ALJ must consider several factors including: (1) whether the doctor has examined the claimant; (2) whether the doctor has a treating relationship with the claimant; (3) the extent to which the doctor presents medical evidence and explanation supporting his opinion; (4) whether the doctor's opinion is consistent with the record as a whole; and (5) whether the doctor is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c). Dr Rogers is not a treating physician. Therefore, the ALJ was not required to give his opinion controlling weight under 20 C.F.R. § 404.1527(c)(2). Moreover, even the opinions of treating physicians may be rejected "when the evidence supports a contrary conclusion." *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

The ALJ did not accept Dr. Rogers' opinion that Springer's mental impairment was severe. He found that "[a]s addressed above, the evidence is more consistent with a non-severe mental impairment," and observed that "although [Springer] has a diagnosis of anxiety and depression, his ability to concentrate and his ability to interact with others is not more than mildly limited." R. 31. In determining the weight to be given Dr. Rogers' opinion, the ALJ discussed the evidence relevant to the severity of Springer's mental impairment, and found it was contrary to Dr. Rogers' opinion of a severe impairment. The court finds substantial evidence in the record supports the ALJ's decision not to credit Dr. Rogers' opinion.

For the above reasons, the court concludes the ALJ properly considered the relevant evidence in finding Springer's mental impairment was not severe. His finding is supported by substantial evidence in the record.

### D.

Springer presented evidence to the Appeals Council, which consists of a behavioral health consultation performed in February 2011, by Byrom Goodwin, a licensed counselor. R. 479-82. He asserts that evidence "revealed pain and severe anxiety." Pl.'s Br. 14. Springer also asserts the "diagnostic impression was major depressive disorder, panic disorder without agoraphobia and rule out schizophrenia." *Id*. The Appeals Council reviewed the evidence, but found it did not provide a basis for changing the ALJ's decision. R. 1.

Although Springer discusses the evidence submitted to the Appeals Council, he does not argue the Appeals Council erred in failing to review his case. In *Ingram v. Comm'r of Soc. Sec. Admin*, the Court explained that "when a claimant challenges the administrative law judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, [the reviewing court] need not consider evidence submitted to the Appeals Council." 496 F.3d 1253, 1266 (11th Cir. 2007) (explaining the holding in *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998)). Because Springer does not challenge the decision of the Appeals Council to deny

review, this court cannot consider the new evidence in determining whether the ALJ's decision is supported by substantial evidence.

Although the court cannot consider the evidence submitted to the Appeals Council in reviewing the ALJ's decision, it notes the evidence was from an evaluation conducted nine months after the ALJ's decision. Therefore, its relevance to Springer's condition at the time of the ALJ's decision is tenuous. Further, because the report was not from an acceptable medical source, it cannot be used to establish the presence of an impairment. *See* 20 C.F.R. § 404.1513(a) (listing acceptable medical sources who can provide evidence to establish an impairment). Nor does it qualify as a medical source opinion. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairments . . . ."). Therefore, even if the evidence could be considered, it would not render the ALJ's denial of benefits erroneous. *See Ingram* 496 F.3d at 1262 (holding that a court reviewing the Appeals Council's denial of review must consider whether the new evidence renders the denial of benefits erroneous).

## V. CONCLUSION

The court concludes the ALJ's determination that Springer is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. An appropriate order will be entered.

DONE and ORDERED this 5th day of March, 2014.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE